Wm. D. Robinson and Wm. C. House v. Thomas Walsh.

*Fraud—General verdict—Fraudulent Chattel Mortgage.*

1. In trover for goods which plaintiff had sold in reliance on false representations, and defendant had seized upon a chattel mortgage given him for the purpose of defrauding plaintiff, a general verdict in plaintiff's favor covers the questions of defendant's participation in or knowledge of the fraud, if those questions were submitted to the jury.

2. It is too late to object for the first time in the appellate court, that the jury had taken to their room a memorandum made by counsel.

3. A chattel mortgage is invalid if instead of being taken as security it was taken to prevent the vendor of the mortgaged goods from recovering them or their value.

Error to the Superior Court of Detroit. (Chipman, J.) June 12.—September 23.

Trover. Defendant brings error. Affirmed.

*Henry C. Wisner* for appellant.

*Levi T. Griffin (Griffin & Warner)* for appellees. One who claims title under a fraudulent vendee must show that he is a bona fide purchaser: *Devoe v. Brandt* 53 N. Y. 462; and to constitute a bona fide purchaser there must be a parting with money or property or the doing of some act upon the faith of the purchase itself which could not be retracted, such as executing a release for a pre-existing debt: *Rollins v. Callender* 1 Freem. Ch. 295; *McLeod v. First National Bank* 42 Miss. 112; *Root v. French* 13 Wend. 570; *Lynch v. Beecher* 38 Conn. 490; *Downs v. Belden* 46 Vt. 674; *Williamson v. N. J. R. R. Co.* 29 N. J. Eq. 311; *George v. Kimball* 24 Pick. 234; *Rison v. Knapp* 1 Dillon 186; *Nicol v. Crittenden* 55 Ga. 497; *Boxheimer v. Gunn* 24 Mich. 372; *Stone v. Welling* 14 Mich. 514; *Thomas v. Stone* Walk. Ch. 117; *Dixon v. Hill* 5 Mich. 404; *Warner v. Whittaker* 6 Mich. 133; *Blanchard v. Tyler* 12 Mich. 339; *Chadwick v. Broadwell* 27 Mich. 6; *Kohl v. Lynn* 34 Mich. 360; *Johnson v. Peck* 1 Woodb. & Minot 334; *Morse v. Godfrey* 3 Story 364; *Tiffany v. Warren* 37 Barb. 571.

SHERWOOD, J. The action in this case is trover to recover the value of a quantity of goods consisting of a stock of boots and shoes. The plaintiffs, who did business in Detroit, in the month of August, 1882, made a sale of goods, amounting to about $1000, to King & Co., who had stores and did business at Grand Rapids and Big Rapids. At the time of this purchase the defendants owed plaintiffs about $112. The defendants continued to buy goods of plaintiffs through August and September and October following, and made payments thereon. On October 17th and November 9th the defendants made purchases of plaintiffs aggregating about $2300, and made some payments on their account as before. The plaintiffs claim that August 11th, when the $1000 purchase was made, King & Co. made representations as to their financial condition, which induced the plaintiffs to make the sales to defendants of October 17th and November 9th.

The firm of King & Co. was composed of Daniel Walsh and Joseph Walsh, a brother of defendant. The defendant was a member of the firm of Thomas Walsh & Co., and did business in Detroit. This company was composed of Thomas Walsh and William H. Jennings, the latter being a special partner. The plaintiffs and Thomas Walsh & Co. had for a number of years been engaged in the wholesale auction business, dealing in boots and shoes, and were competing firms in that trade in the city of Detroit. King & Co. were engaged in the same business, and had been a customer of both the other firms in Detroit a number of years, and had running accounts with each up to the time the present controversy arose.

The plaintiffs claim that on August 11, 1882, King & Co. made representations upon which plaintiffs relied, and which induced them to make the sales of October 29th and November 17th, above mentioned. The representations, as testified to by plaintiff Robinson, were as follows: After taking the order of King & Co. for goods, he says:

"I sent for Daniel Walsh; we had taken his order for a bill of goods, and I asked him the amount of his indebtedness. He said he owed to Ellis & Butman, of Chicago,

about $600 ; he owed us between $100 and $200. He said that would cover all his indebtedness for merchandise, or for anything else. I asked him directly whether he owed anything to Thomas Walsh & Co. (I was speaking about King & Co), and he said no ; they did not owe him a dollar. This was on August 11, 1882. That they had not bought any goods of him in some time, for the reason that Thomas Walsh & Co. did not carry the line of goods that their trade required. He said he did not owe him anything for borrowed money ; did not owe him anything at all. He said the stock in the store was between $4000 and $5000 ; that they had an insurance of $2000 ; that they had a note made by Muffley for $1600. I asked him who the firm was composed of. He said it was J. King, and he did not care to disclose who the other member of the firm was. He stated further on that his former debts had never been settled, and he couldn't own anything in his own name, and therefore a brother of his in Canada owned it for him."

The plaintiffs claim that so far as King & Co.'s not being indebted to Thomas Walsh & Co., the representations were false.

On the 20th of November, 1882, Thomas Walsh & Co. held three notes; the first, dated August 29, 1882, for $2165.64 ; the second, dated September 18, 1882, for $1995.44 ; and the third, dated October 30th, for $4208 ; and on the said 22d day of November, for this aggregate of indebtedness, divided in two parts, King & Co. executed two mortgages to the defendant to secure their payment to Thomas Walsh & Co. ; one for $5500, on the Grand Rapids stock, and the other for $2869.31, on the stock at Big Rapids, with interest, due December 5th following. The first two notes defendant claimed had been given in renewal of other paper by King & Co., and for amounts due on account; and the third was given for goods purchased by King & Co. from defendant, October 17, 1882. When the mortgage became due defendant took possession of the goods, and by virtue thereof made sale of the same. While he thus had possession, the plaintiffs pursued the goods sold to King & Co., and found $1452.75 worth in the possession of the defendant, made demand for them of defendant, which was

refused, and then brought this suit, claiming that the pur-- chase by King & Co. was fraudulent, and that the defendant was a party to the scheme of fraud by which King & Co.. obtained them.

A trial was had in the Superior Court in Detroit before a jury, who returned a general verdict for the plaintiffs for $1503.52. They also found specially, in answer to questions·· submitted to them by the court: (1) That Robinson made the sales of October 17th and November 9th to King & Co.,. relying upon the statement of Daniel Walsh, on August 11th,. that King & Co. did not owe Thomas Walsh & Co. at that time ; (2) that Robinson would not have made those sales· if Daniel Walsh had not made the statement that King & Co. were not then indebted to Thomas Walsh & Co. ; (3) that Robinson made those sales relying solely upon the state-- ments made ; (4) that there is no evidence that King & Co.. owed anybody except the balance due Robinson of $125 and $800, as stated by Daniel Walsh on the 11th of August, if· they did not owe Thomas Walsh ; (5) that King & Co. were· indebted to Thomas Walsh, as shown in the account on. defendant's books, $4000 and over.

It was claimed by plaintiff's counsel that the goods on the· last two purchases were procured by fraud, and that Thomas· Walsh participated in it from the beginning, and testimony was given and circumstances disclosed, the tendency of which was to show that fact. That question was submitted to the· jury by the court in his charge, and the general verdict is· against the defendant, which covers that point. And even though the indebtedness from King & Co. to Thomas Walsh existed, it is claimed that from all the facts and circumstances appearing in the case, he knew of the fraudulent manner in which the goods were obtained from plaintiffs, participated in the schemes to obtain them, and defraud the plaintiffs out of their pay, and that the mortgages were issued for that pur-- pose, and not to secure the payment of the indebtedness· claimed by defendant. The general verdict covers this part also, as the whole question of fraud in all its phases, as claimed, went to the jury. Their finding is conclusive upon.

the subject, unless error was committed in the charge or the rulings of the court in taking the testimony.

A careful examination of the record and assignments of error have failed to disclose to us any rulings on the admission of the testimony not within the previous decisions of this Court. The discretion allowed the trial judge in this class of cases seems not to have been exceeded or abused, and we do not feel at liberty to disturb the verdict on account of any exceptions taken to the judge's charge, or his refusals to charge, appearing in the errors assigned.

It is unnecessary to consider each exception separately, but suffice it to say that most of defendant's requests to charge were given in substance, and those rejected were properly refused. There was testimony of some sort tending to prove or disprove every fact submitted to the jury by the court in those portions of his charge to which exception is taken. There was no objection made to the jury's taking the memorandum submitted by plaintiffs' counsel to their room when it was submitted. The objection in this Court comes too late to avail the defendant.

There was no error in the court's refusal to give the plaintiffs' seventh request, upon which counsel for defendant specially relied. The request is as follows : " Independently of every other question in the case, if the jury find that King & Co. were indebted to Thomas Walsh & Co., as stated in the chattel mortgage, your verdict must be for the defendant." As we have already said, if the mortgage was made and not intended for security, but to prevent the plaintiffs from recovering the property or its value, obtained upon a fraudulent sale, it would be of no validity, and the verdict given would be right.

The judgment of the Superior Court in this case must be Affirmed with costs.

The other Justices concurred.